UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:07-CV-00070-RGJ-CHL

DANIEL C. CADLE, Individually and
Derivatively on Behalf of the Corporation
and the Shareholders of iGate, Inc.                                    PLAINTIFF

v.

WILLIAM J. JEFFERSON; ANDREA G. JEFFERSON;
THE ANJ GROUP, LLC; VERNON L. JACKSON; and
JOHN DOES 1-100                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant William J. Jefferson's Motion for Relief from Judgment and Order (DN 142). For the reasons below, Jefferson's motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.     BACKGROUND

Defendant Vernon L. Jackson ("Jackson") founded iGate, a telecommunications broadband business, in 1998. (Mem. Op. 2, DN 132). In the mid-2000s, Jackson established a business relationship with Defendant William J. Jefferson ("Jefferson"), who was a Congressman at the time. (Mem. Op. 2). That relationship led to a contractual agreement between Jackson and Jefferson's wife's company, The ANJ Group, LLC ("ANJ"), under which iGate paid ANJ $7,500 a month and provided one million stock options at a price of $2.50 per share purportedly in exchange for ANJ's marketing services. (Mem. Op. 3). Jackson soon noticed that he was still working with Jefferson, even though he was supposed to be working with ANJ, and as far as Jackson could tell Jefferson's wife never performed duties under the contract. (Mem. Op. 3). Jackson continued to pay ANJ its monthly fees, however, to maintain his relationship with

1

Jefferson. (Mem. Op. 4). Jackson also eventually issued hundreds of thousands of shares of iGate stock to ANJ for free. (Mem. Op. 5). Jackson and Jefferson continued this dubious relationship until late 2005. (Mem. Op. 5-6).

Soon thereafter, authorities learned of Jackson's and Jefferson's dealings. On May 2, 2006, Jackson pleaded guilty to conspiracy to commit bribery of a public official and bribery of a public official. (Mem. Op. 7). On June 4, 2007, Jefferson was indicted on sixteen criminal counts and was found guilty at trial of most of them. (Mem. Op. 7-8).

Before Jefferson's criminal indictment, Plaintiff Daniel C. Cadle ("Cadle") filed an action on behalf of iGate against Jefferson and others asserting claims for aiding and abetting a breach of fiduciary duty, unjust enrichment, and civil conspiracy. (Mem. Op. 8). After Jefferson's convictions, Cadle moved for partial summary judgment against him on those three claims, which this Court granted and entered judgment (the "Judgment") on July 14, 2017. (Mem. Op. 36; Order, DN 133).

On October 4, 2017, the United States District Court for the Eastern District of Virginia ("Virginia District Court") vacated seven of Jefferson's ten criminal convictions. (Pl.'s Resp. Def.'s Mot. Amend Ex. 1, at 41, DN 144-1); *United States v. Jefferson*, 289 F. Supp. 3d 717, 744 (E.D. Va. 2017). On December 1, 2017, the Virginia District Court vacated another one of Jefferson's convictions. (Pl.'s Resp. Def.'s Mot. Relief Ex. 2, at 1, DN 144-2).

In the present motion, Jefferson seeks to vacate this Court's Judgment under Fed. R. Civ. P. 60(b)(5) as a result of the Virginia District Court's rulings. (Def.'s Mot. Relief 1, DN 142). Jefferson argues that this Court applied the doctrine of collateral estoppel[1] in granting summary

---

[1] Offensive use of issue preclusion, otherwise known as collateral estoppel, "occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co. v. Shore*, 439 U.S.

judgment for Cadle relying on the now-vacated convictions. (Def.'s Mot. Relief 1). Jefferson contends that the Judgment should be vacated as to the claims of aiding and abetting a breach of fiduciary duty, unjust enrichment, and civil conspiracy.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 60(b)(5), the court may relieve a party from a final judgment if that judgment is based on an earlier judgment that has been reversed or vacated. "Typically, the 'based on' language from Rule 60(b)(5) applies when 'the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel.'" *Gillispie v. Warden, London Corr. Inst.*, 771 F.3d 323, 327 (6th Cir. 2014) (quoting *Klein v. United States*, 880 F.2d 250, 258 n.10 (10th Cir. 1989)). "For a decision to be 'based on' a prior judgment within the meaning of Rule 60(b)(5), the prior judgment must be a necessary element of the decision . . . ." *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 650 (1st Cir. 1972) (citations omitted).

Although Jefferson's main argument centers on the application of collateral estoppel, throughout his motion and reply he addresses the merits of Cadle's claims on evidentiary grounds, as well. (Def.'s Mot. Relief 6; Def.'s Reply Mot. Relief 8-11, DN 150). A Rule 60(b) motion, however, is properly denied where the movant attempts to use the motion to relitigate the merits and issues of a claim already decided. *Barnes v. Clinton*, 57 F. App'x 240, 241 (6th Cir. 2003); *see also O'Connell v. Miller*, 8 F. App'x 434, 435 (6th Cir. 2001) ("A Rule 60(b) motion must be denied if . . . it is merely an attempt to relitigate the case." (citing *Mastini v. Am. Tel. & Tel. Co.*,

---

322, 326 n.4 (1979). "The doctrine has been regularly employed by courts to preclude the litigation of an issue in a civil action already addressed in an associated criminal case." *Westport Ins. Corp. v. Mudd*, No. 1:08-CV-00034-R, 2010 WL 4638760, at *3 (W.D. Ky. Nov. 5, 2010) (citations omitted). Courts apply a four-element test when determining if a judgment can provide the basis for another judgment. *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589-90 (6th Cir. 2009) (citing *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987)).

369 F.2d 378, 379 (2d Cir. 1966))); *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001) ("A Rule 60(b) motion is not to be used as a substitute for appeal." (citing *Greenwood Expls., Ltd. v. Merit Gas & Oil Corp., Inc.*, 837 F.2d 423, 427 (10th Cir. 1988))). To the extent that Jefferson seeks to relitigate this Court's prior ruling, his arguments in that regard fail. *O'Connell*, 8 F. App'x at 435 (citation omitted).

### III. DISCUSSION

The issue is whether this Court's decision to grant summary judgment in favor of Cadle was based on Jefferson's now-vacated convictions. *Gillispie*, 771 F.3d at 327 (citation omitted). In other words, only if Jefferson's now-vacated convictions were "a necessary element of the [district court's] decision" must the Judgment be vacated. *Lubben*, 453 F.2d at 650 (citation omitted).

To begin, Cadle concedes that the Judgment in his favor on the unjust enrichment claim must properly be set aside. (Pl.'s Resp. Def.'s Mot. Relief 6, DN 144). So the portion of the Judgment in favor of Cadle on his unjust enrichment claim will be vacated. This leaves the aiding and abetting a breach of fiduciary duty and civil conspiracy claims for consideration. Jefferson argues that the reliance on collateral estoppel as the basis for granting summary judgment for Cadle on these two claims warrants vacating the Judgment. (Def.'s Mot. Relief 1).

#### A. Civil Conspiracy

As to the civil conspiracy claim, Jefferson correctly asserts that the court relied on collateral estoppel as the basis for two of the elements of that claim. (Mem. Op. 26-29). Jefferson's argument still fails because one of the criminal convictions that was *not* vacated by the district

4

court in Jefferson's criminal case, Count 1, served as the basis for summary judgment. (Mem. Op. 26-29). Jefferson appears to acknowledge this fact, but further argues:

> Although Count 1 of Movant's criminal conviction was not vacated by the Virginia court, every aspect of Count 1 that pertained to the existence of a conspiracy to make a corrupt agreement between Movant and Jackson was vacated, on the issue of the lack of sufficiency of proof of an official act to support a bribery conviction. Only the matter of a conspiracy to violate The Foreign Corrupt Practices Act remained of Count 1 after the Virginia Court's October 4, 2017 order and its December 1, 2017 resentencing, an alleged conspiracy that did not involve Movant's activities with Jackson or iGate. . . .
>
> [N]othing relating to Movant's acts or conduct with Jackson or iGate remained valid after the Virginia Court vacated every part of the jury's findings regarding Count 1, save for the here impertinent conspiracy to violate the Foreign Corrupt Practices Act.

(Def.'s Mot. Relief 5). The Court cannot find, and Jefferson does not point to, any support for this contention.

To start, Jefferson generally asserts that the Virginia District Court either explicitly or implicitly partially vacated the Count 1 conviction to the extent that the conviction relied on his relationship with Jackson and iGate. Jefferson appears to be arguing that the vacation of his other convictions somehow affected his Count 1 conviction. The entire basis for the Virginia District Court's vacating some of Jefferson's convictions, however, was that the jury instructions erroneously and prejudicially defined the term "official acts."[2] (Pl.'s Resp. Def.'s Mot. Amend Ex. 1, at 27-40); *Jefferson*, 289 F. Supp. 3d at 736-44. The Virginia District Court explicitly stated:

> Count 1 of the indictment, the alleged conspiracy to violate the Foreign Corrupt Practices Act (the "FCPA"), *was not infected by the allegedly improper jury instruction*. . . .

---

[2] Whether Jefferson was performing "official acts" while he was engaging in his illicit relationship with Jackson, iGate, and others constituted an element of the offenses as charged in Counts 3, 4, 6, 7, 12, 13, and 14 of the Indictment. (Pl.'s Resp. Def.'s Mot. Amend Ex. 1, at 27-35); *Jefferson*, 289 F. Supp. 3d at 736-41.

The erroneous jury instructions on the meaning of 'official acts' under the bribery statute *have no bearing on the jury's guilty verdict on the FCPA conspiracy count* simply because an 'official act' is not an element of an FCPA conspiracy.

(Pl.'s Resp. Def.'s Mot. Amend Ex. 1, at 26); *Jefferson*, 289 F. Supp. 3d at 735 (emphasis added). The Virginia District Court also concluded its opinion with the following: "Accordingly, an order will issue granting Jefferson's § 2255 motion in part and denying it in part, vacating his convictions and sentences on Counts 3, 4, 6, 7, 12, 13, and 14, *but leaving his convictions and sentences intact on Counts 1*, 2, and 16."[3] (Pl.'s Resp. Def.'s Mot. Amend Ex. 1, at 41); *Jefferson*, 289 F. Supp. 3d at 744 (emphasis added). Jefferson's claim that Count 1 was affected, either implicitly or explicitly, by the Virginia District Court's judgment lacks merit.

Jefferson's assertion that "the matter of a conspiracy to violate The Foreign Corrupt Practices Act [that] remained of Count 1 . . . did not involve Movant's activities with Jackson or iGate" is also meritless. Count 1 of the Indictment explicitly identified Jefferson's relationship with Jackson as forming the basis for Jefferson's FCPA charge:

> Beginning in or about January 2001 through in or about August 2005, within the Eastern District of Virginia and elsewhere, the defendant, WILLIAM J. JEFFERSON, did knowingly combine, conspire, confederate, and agree, *together with Vernon L. Jackson* . . . and others . . . to commit the following offenses against the United States:
>
> . . .
>
> c. to willfully use the mails and any means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, and offer, gift, promise to give, and authorization of the giving of anything of value to any foreign officials for purposes of: (i) influencing acts and decisions of such foreign officials in their official

---

[3] Jefferson's conviction under Count 16, a RICO Act violation, was later vacated after the Virginia District Court realized that vacating Counts 3, 4, 6, 7, 12, 13, and 14 left only one predicate act supporting Jefferson's RICO conviction. (Def.'s Mot. Relief 3; Pl.'s Resp. Def.'s Mot. Relief 4); *see United States v. Lawson*, 535 F.3d 434, 443 (6th Cir. 2008) ("A pattern of racketeering activity requires at least two predicate acts." (citing 18 U.S.C. § 1961(5))). Once again, there is no indication the Virginia District Court's judgment in this regard affected Count 1.

> capacities; (ii) inducing such foreign officials to do and omit to do acts in violation of the lawful duty of such officials; (iii) securing any improper advantage; and (iv) inducing such foreign officials to use their influence with a foreign government and instrumentality thereof to affect and influence any act and decision of such government and instrumentality, in order to assist Defendant JEFFERSON and others in obtaining and retaining business for and with, and directing business to, any person, in violation of Title 15, United States Code, Section 78dd-2(a) [i.e., the FCPA].

(Pl.'s Mot. Summ. J. Ex. 18, ¶ 40, DN 113-19 (emphasis added)). The Virginia District Court also recognized that Jefferson's relationship with Jackson and iGate supported Jefferson's conviction under Count 1: "Furthermore, the record overwhelmingly supports the FCPA conspiracy charge. Jefferson attempted to bribe foreign officials on multiple occasions *as part of the iGate scheme*." (Pl.'s Resp. Def.'s Mot. Amend Ex. 1, at 26); *Jefferson*, 289 F. Supp. 3d at 735 (emphasis added).

The Virginia District Court left Jefferson's conviction under Count 1 untouched—there is simply no expression by the Virginia District Court that Count 1 was partially vacated. Furthermore, Jefferson's conviction under Count 1 was predicated on his relationship with Jackson, as set forth in the indictment and recognized by the Virginia District Court.

Jefferson acknowledges that his conviction under Count 1 paragraph c.—conspiracy to violate the FCPA—still stands. (Def.'s Reply Pl.'s Resp. Def.'s Mot. Relief 4-5, DN 150). The two elements of Cadle's civil conspiracy claim that this Court found to be satisfied due to Jefferson's Count 1 conviction were (1) "an unlawful/corrupt combination or agreement" between Congressman Jefferson and Jackson (2) "to do by some concerted action an unlawful act." (Mem. Op. 26 (citations omitted)). By finding Jefferson guilty under Count 1 of conspiracy to violate the FCPA and naming Jackson as one of his conspirators, the jury found the existence of "an unlawful/corrupt combination or agreement." As this Court previously recognized, to find Jefferson guilty under Count 1 of conspiracy to violate the FCPA, the jury needed to find "that at some point during the existence or life of the conspiracy, agreement or understanding, a member .

7

. . of the conspiracy did one of the overt acts described in Count 1 of the indictment for the purpose of advancing, furthering or helping the objection or purpose of the conspiracy." (Mem. Op. 27 (internal quotation marks omitted) (citation omitted)). That jury finding provided the basis for this Court's use of collateral estoppel to satisfy the second element of civil conspiracy. (Mem. Op. 28). Even if Jefferson's contention that his conviction under Count 1 was partially vacated, this Court relied on the part of his conviction under Count 1 that Jefferson nevertheless admitted remained as the basis for applying the principle of collateral estoppel.

This Court's Judgment in favor of Cadle on his civil conspiracy claim against Jefferson will stand.

### B. <u>Aiding and Abetting a Breach of Fiduciary Duty</u>

As to the aiding and abetting a breach of fiduciary duty claim, the problem with Jefferson's argument here is that collateral estoppel was not a "necessary element" of this Court's decision— the Judgment was not "based on" Jefferson's now vacated convictions. As stated:

> The Court notes that Congressman Jefferson appears to be under the misconception that Cadle relies solely on issue preclusion to establish every element of every claim. This is not the case. For some elements, Cadle relies on evidence in the record. In those instances, Congressman Jefferson's argument that issue preclusion does not apply is unavailing.

(Mem. Op. 9 n.3). This Court then analyzed Cadle's aiding and abetting a breach of fiduciary duty claim:

> Cadle moves for summary judgment against Congressman Jefferson on Count II for aiding and betting a breach of fiduciary duty. Cadle Mem. Supp. Mot. Partial Summ. J. 13, ECF No. 113-1. . . . To prevail on this claim in Kentucky, Cadle must show (1) that Jackson breached his fiduciary duty, (2) that Congressman Jefferson gave "substantial assistance or encouragement" to Jackson, and (3) that Congressman Jefferson knew that Jackson's conduct breached a fiduciary duty.
>
> The first element requires Cadle to show that Jackson breached his fiduciary duty. "To state a claim for breach of fiduciary duty under Kentucky law, plaintiff must

8

establish that the defendant owed a fiduciary duty, breached that duty, and that the breach caused damages."

Congressman Jefferson does not dispute that Jackson owed a fiduciary duty to iGate or that Jackson breached that duty when he paid bribes to the Congressman. *See* Jefferson Resp. Opp. Mot. Partial Summ. J. 3, ECF No. 122. Jackson was chairman and CEO of iGate. Trial Tr. 151, ECF No. 113-2. Officers of corporations owe fiduciary duties to the corporation. As such, the Court finds that Jackson owed a fiduciary duty to iGate. And it is apparent that Jackson paid bribes to Congressman Jefferson using iGate funds. *See* Trial Tr. 164-65, ECF No. 113-2. An officer's fiduciary duties include the duty not to act against the corporation's interest. It was certainly against iGate's interest when Jackson used iGate funds for an illegal purpose. Thus, the Court finds that Jackson breached his duty when he paid bribes to Congressman Jefferson.

Congressman Jefferson does dispute that Jackson's breach caused damages to iGate. Jefferson Resp. Opp. Mot. Partial Summ. J. 3, ECF No. 122. . . .

While it may be true that iGate suffered through financial difficulties, those difficulties do not change that Jackson used iGate funds to pay bribes to Congressman Jefferson. Congressman Jefferson's evidence of these financial difficulties goes to the extent of damage that iGate incurred, rather than the existence of damage. Indeed, common sense and available case law indicate that a director or officer breaches his fiduciary duty when he pays bribes using corporate funds. Using corporate funds for an illegal purpose is a breach of fiduciary duty, which causes damage to the corporation if only in the amount of those corporate funds expended. Additionally, the evidence shows that Congressman Jefferson and Jackson were both criminally prosecuted for their actions. Plea Agreement, ECF No. 113-18; Jefferson Jury Verdict, ECF No. 113-20. As a result of the criminal prosecution of its chairman and CEO, "iGate ceased its operations, closed its headquarters in Louisville, Kentucky and furloughed all of its employees." Verified Compl. ¶ 41, ECF No. 1. That iGate is no longer a going concern as a result of Congressman Jefferson's and Jackson's actions provides proof of damages to iGate. Thus, the Court finds that Jackson breached his fiduciary duty and caused damage to iGate when he paid bribes to Congressman Jefferson. Accordingly, Cadle has proven the first element of aiding and abetting a breach of fiduciary duty.

The second element of aiding and abetting a breach of fiduciary duty requires Cadle to show that Congressman Jefferson gave "substantial assistance or encouragement" to Jackson. *Congressman Jefferson does not dispute this element. See* Jefferson Resp. Opp. Mot. Partial Summ. J. 4, ECF No. 122. . . .

The third element of aiding and abetting a breach of fiduciary duty requires Cadle to show that Congressman Jefferson knew that Jackson's conduct breached a fiduciary duty. . . .

> Congressman Jefferson argues that issue preclusion cannot be applied here because the jury in his criminal case did not need to find that the Congressman knew Jackson was breaching his fiduciary duty. Jefferson Resp. Opp. Mot. Partial Summ. J. 4, ECF No. 122. But Cadle does not rely on issue preclusion to show this element. Rather, Cadle points to circumstantial evidence in the record and asks this Court to draw an inference as to Congressman Jefferson's knowledge. Cadle Mem. Supp. Mot. Partial Summ. J. 19, ECF No. 113-1. Thus, Congressman Jefferson's arguments against issue preclusion here are unavailing.
>
> . . . [After consideration of the facts evidenced by Cadle,] the Court is otherwise persuaded that Congressman Jefferson knew that Jackson was breaching his fiduciary duty by paying bribes to the Congressman. First, it can be presumed that Congressman Jefferson knew that Jackson was a fiduciary of iGate, particularly given that the Congressman is a lawyer. Directors and officers of corporations are "classic fiduciaries" and presumed to owe such duties. Second, there is no doubt that Congressman Jefferson knew that Jackson was paying iGate funds to the Congressman through ANJ. Invoices from ANJ were either delivered to Jackson by Congressman Jefferson in person or by facsimile. Trial Tr. 25, ECF No. 113-7. At least one of these invoices contained Congressman Jefferson's handwriting. *Id.* at 38. In fact, wire transfers to ANJ were being routed to an account listed in Congressman Jefferson's name. Jefferson Dep. 47-50, ECF No. 113-4. Thus, Congressman Jefferson knew that Jackson was paying him iGate funds.
>
> . . . Accordingly, Cadle has shown the third element of aiding and abetting breach of a fiduciary duty, and the Court will grant summary judgment to Cadle on this claim against Congressman Jefferson.

(Mem. Op. 11-19 (emphasis added)). As this Court's opinion explains, it relied on (1) Jefferson's failure to argue certain points, (2) evidence and application of the facts as espoused by Cadle, and (3) case law to find in favor of Cadle on his aiding and abetting a breach of fiduciary duty claim—not the principle of collateral estoppel.

While it is true that this Court found that collateral estoppel provided satisfaction of the second element of aiding and abetting a breach of fiduciary duty, collateral estoppel simply provided *another* basis by which the district court determined satisfaction of that element. (Mem. Op. 14-15). This Court had already recognized that Jefferson did not dispute the existence of that element, only using collateral estoppel as an *alternative* means by which to grant summary judgment in favor of Cadle on his aiding and abetting a breach of fiduciary duty claim. "[W]hen

10

a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded." *Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) (citing *Hodes v. U.S. Dep't of Housing & Urban Dev.*, 532 F. Supp. 2d 108, 117 (D.D.C. 2008)); *see also Ohio Start Transp. LLC v. Roadway Express, Inc.*, No. 2:09-cv-00261, 2010 WL 3666982, at *3 (S.D. Ohio, Sept. 14, 2010) (party who failed to respond to other party's argument "waiv[ed] its ability to challenge the argument and effectively conced[ed] the point"); *Crenshaw v. Portfolio Recovery Assocs., LLC*, 2020 WL 113358, at *3 n.4 (W.D. Ky. Jan. 9, 2020) (citations omitted) (recognizing that the Court has power to grant summary judgment in favor of party where other party does not oppose it).

In other words, this Court's use of collateral estoppel as an additional basis by which to grant summary judgment in favor of Cadle was not "necessary" to its judgment—this Court's judgment was not "based on" collateral estoppel because Jefferson conceded satisfaction of the "substantial assistance or encouragement" element. As a result, vacation of Jefferson's criminal convictions that formed the basis for this Court's reliance on collateral estoppel does not affect its judgment as it pertains to the aiding and abetting a breach of fiduciary duty claim, since this Court's collateral estoppel finding was unnecessary to its judgment on that claim.

Jefferson claims that his concessions were a product of his belief that he "could not credibly contest" the application of collateral estoppel to satisfy certain elements of Cadle's claims, not a concession as to the satisfaction of those elements on other grounds. (Def.'s Reply Def.'s Mot. Relief 7, DN 150). Jefferson would have this Court infer that Jefferson's silence on the satisfaction of certain elements of Cadle's claims was because of the application of collateral estoppel and not a concession that those elements are indisputably otherwise satisfied. Jefferson points to no authority, however, to support this kind of speculative inference-making.

11

Moreover, Jefferson's argument that he believed some of his criminal convictions precluded him from arguing certain points on collateral estoppel grounds is unavailing. For example, Jefferson contends that he did not contest Jackson's breach of fiduciary duty due to the existence of one of Jefferson's now-vacated convictions, i.e., because of the application of collateral estoppel. (Def.'s Reply Mot. Relief 7). Yet Jefferson did dispute that the first element of Cadle's unjust enrichment claim was satisfied because no benefit was conferred upon him at Cadle's expense, even though collateral estoppel applied to bar Jefferson from making this argument—Count 16 of the Indictment charged Jefferson with racketeering when he knowingly "did demand, seek, receive, accept, *and* agree to receive and accept things of value from iGate for ANJ . . . in the form of monthly payments of money, shares of profits and revenue . . . ." (Def.'s Resp. Pl.'s Mot. Summ. J. 5, DN 122; Mem. Op. 21) (emphasis in original). Jefferson does not explain, and the Court will not infer, the reason or reasons for his failure to contest certain applications of collateral estoppel versus others.

Jefferson also argues that vacating his criminal convictions involving bribery should negate this Court's conclusion that Jefferson breached his fiduciary duty for what this Court termed "pay[ing] bribes to Congressman Jefferson using iGate funds . . . [and] Jackson us[ing] iGate funds for an illegal purpose." (Mem. Op. 12). To start, Jefferson's argument suffers from the same deficiency as the previous argument—this Court explicitly recognized that "Congressman Jefferson does not dispute that Jackson owed a fiduciary duty to iGate or that Jackson breached that duty when he paid bribes to the Congressman." (Mem. Op. 11). This Court could have ended its analysis there, making any further recitation simply an alternative, not necessary, basis for its ruling. *See Sykes*, 573 F. Supp. 2d at 117.

Even assuming this Court did use collateral estoppel as the basis for its conclusion, Jefferson stood convicted of Count 1 of his Indictment for which the Virginia District Court recognized: "Jefferson attempted to bribe foreign officials on multiple occasions as part of the iGate scheme." (Pl.'s Resp. Def.'s Mot. Amend Ex. 1, at 26); *Jefferson*, 289 F. Supp. 3d at 735. So, this Court's characterization of Jackson breaching his fiduciary duty owed to iGate for paying Jefferson as "illegal activity" still applies. In fact, the Virginia District Court expressly said: "No one reading this opinion should conclude that Jefferson was innocent of crime; he was not innocent of crime." (Pl.'s Resp. Def.'s Mot. Amend Ex. 1, at 40); *Jefferson*, 289 F. Supp. 3d at 744.

As for this Court's characterization of Jackson's payments to Jefferson as "bribery," the Virginia District Court vacated some of Jefferson's convictions related to bribery not because it found that the payments made by Jackson to Jefferson were not bribes but because Jefferson was not performing "official acts" in acceptance of those bribes within the meaning of 18 U.S.C. § 201(a)(3) to sustain Jefferson's criminal convictions predicated on satisfaction of the "official acts" element. (Pl.'s Resp. Def.'s Mot. Relief Ex. 1, at 28-34); *Jefferson*, F. Supp. 3d at 736-41. More importantly, vacating some of Jefferson's criminal convictions related to bribery have little to no bearing on this Court's factfinding and ability to characterize Jackson's payments to Jefferson as "bribes." Simply because Jefferson was not criminally convicted of "bribery" does not mean that the payments made by Jackson to Jefferson cannot constitute "bribes" or payments made for "an illegal purpose" in the context of these civil claims. *See generally Perrin v. United States*, 444 U.S. 37, 48-50 (1979) (discussing the meaning of the term "bribery" and holding that the Travel Act, 18 U.S.C. § 1952, prohibits the bribery of a private individual). Jackson's own testimony, as pointed out by the district court, essentially confirms that he was "bribing" Jefferson. (Mem. Op. 3-6). In sum, regardless of its characterization, Jackson's payments to Jefferson

13

breached Jackson's fiduciary duty owed to iGate because of the illicitness, a fact recognized by this Court.

Finally, regardless of Jefferson's protestations, this Court's citation to the record in Jefferson's criminal case to support some of its factual findings is not an application of collateral estoppel. This Court made its own findings of fact by examining statements made and information revealed in the criminal case—not simply accepting the Virginia District Court's findings of fact as its own. For example, this Court's citation to "Trial Tr. . . . ECF No. 113-2 [and] 113-7" references Jackson's criminal trial testimony. (Pl.'s Mot. Summ. J. Ex. 1, DN 113-2). This Court's use of testimony from the criminal case to evidence certain facts in the civil case is not an application of collateral estoppel—the whole point of collateral estoppel is to "bar[] subsequent relitigation of a fact." *See Cobbins*, 566 F.3d at 589. That this Court made its own findings of fact directly refutes Jefferson's assertion that this Court relied on collateral estoppel in finding in favor of Cadle on the aiding and abetting a breach of fiduciary duty claim.

Jefferson's reference to this Court's citation to the plea agreement and Jefferson's criminal jury verdict as evidence of this Court's application of collateral estoppel is similarly unavailing. (Mem. Op. 13). This citation supported this Court's finding that "the evidence shows that Congressman Jefferson and Jackson were both criminally prosecuted for their actions." (Mem. Op. 13). That assertion, in turn, supported this Court's conclusion that the criminal prosecution itself, not the *verdict* in the criminal prosecution, caused damages to iGate, thus satisfying the causation-of-damages prong of the first element of an aiding and abetting a breach of fiduciary duty claim. (Mem. Op. 12-13). In other words, the existence of the criminal prosecution, not its result, supported the finding that Jackson's breach caused damages to iGate. For collateral estoppel, it is the result and not the existence of the criminal prosecution that matters, so the fact

that this Court did not rely on the result of that proceeding demonstrates that its opinion was not "based on" collateral estoppel. *See Cobbins*, 566 F.3d at 590 ("[T]he prior proceedings must have *resulted in a final judgment on the merits . . . .*" (emphasis in original) (citation omitted)).

In sum, the Judgment on Cadle's unjust enrichment claim must be vacated, while the Judgment in favor of Cadle on his claims for aiding and abetting a breach of fiduciary duty and civil conspiracy will stand.[4]

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Relief (DN 142) is **GRANTED IN PART** and **DENIED IN PART**. The Court vacates its prior ruling granting summary judgment (DN 133) in favor of Plaintiff on the unjust enrichment claim only.

cc: counsel of record

---

[4] Jefferson has not specifically argued how this Court's award of damages is affected by the vacation of a portion of the Judgment versus the entirety of the Judgment, nor can the Court think of any reason why the compensatory damages award should be modified by the partial vacation.