UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DANIEL C. CADLE, INDIVIDUALLY                                    Plaintiff
AND DERIVATIVELY ON BEHALF OF
THE CORPORATION AND THE
SHAREHOLDERS OF IGATE, INC.

v.                                          Civil Action No. 3:07-cv-70-RGJ

WILLIAM J. JEFFERSON, ANDREA G.                                Defendant
JEFFERSON, THE ANJ GROUP, LLC,
VERNON L. JACKSON AND JOHN DOES
1-100

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Vernon L. Jackson ("Jackson"), proceeding *pro se*, objects to the Magistrate

Judge's order granting Plaintiff Daniel C. Cadle's ("Cadle") motion to compel third parties to

respond to subpoenas duces tecum and overruling Jackson's objections. [DE 194]. Jackson also

separately filed: (1) a motion to immediately stay the responses required by the Magistrate Judge's

order ("motion to stay") [DE 197]; (2) a motion to dismiss post-judgment discovery proceedings

and stay enforcement of the judgment [DE 201]; (3) a motion to quash the subpoena issued to

William A. Warner ("Warner") under Fed. R. Civ. P. 45(a)(4) ("motion to quash") [DE 204]; and

(4) an amended motion correcting the motion to quash, which objects to the subpoena issued to

Warner and seeks a protection order under Fed. R. Civ. P. 45(d)(2)(B) ("amended motion for a

protective order" or "amended motion")[1] [DE 204]. The matter is ripe. For the reasons set forth

---

[1] Jackson initially moved to quash the subpoena issued to Warner pursuant to Fed. R. Civ. P. 45(a)(4) [DE 204], but later submitted a notice of correction and an amended motion after determining that "the correct procedural basis for the motion is Rule 45(d)(2)(B)." [DE 207]. Given that the amended motion was filed only eight days after the original motion, Jackson was permitted to file it as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). The Court will therefore consider the amended motion.

below, the Court **OVERRULES** Jackson's objections [DE 194]; **DENIES AS MOOT** Jackson's motion to stay [DE 197]; **DENIES** Jackson's motion to dismiss post-judgment discovery proceedings and stay enforcement of the judgment [DE 201]; **DENIES** Jackson's motion to quash [DE 204]; and **DENIES** Jackson's amended motion for a protective order [DE 207].

## I.    BACKGROUND

On May 3, 2006, Jackson pled guilty to bribing and conspiring to bribe former United States Congressman William Jennings Jefferson ("Jefferson") to perform "official acts" for the benefit of iGate, Inc. ("iGate"), an Indiana corporation of which Jackson is the controlling shareholder and—until July 11, 2025—the sole director. [DE 175 at 2537; DE 194-1 at 2644]. Jackson was sentenced on September 8, 2006 to sixty months of incarceration on the conspiracy count concurrent to 87 months on the bribery count. [*Id.* at 2538]. Jackson completed his sentence, including a two-year term of supervised release, on January 24, 2012. [*Id.*]. The current matter arises from a separate civil action filed by iGate shareholder Cadle on February 12, 2007 alleging that Jackson acted in concert with Jefferson, Jefferson's family members, and various Jefferson family-controlled entities to mislead, harm, and defraud Cadle and other shareholders of iGate, Inc. [DE 1 at 3]. Cadle therefore commenced this action individually and derivatively on behalf of iGate alleging civil violations, including civil conspiracy, based on the prior criminal charges. On March 21, 2014, the Court dismissed Cadle's claims to the extent that they were pled by Cadle individually because he failed to "allege[] a unique harm to himself or distinguish[] any special duties from the claims brought on behalf of the corporation." [DE 77 at 571]. On July 14, 2017, the Court granted Cadle's motion for summary judgment on Counts II, IV, and VII, finding Jackson liable under Count VII for civil conspiracy. [DE 133]. Accordingly, the Court entered judgment against Jackson on Count VII and awarded iGate $391,993.71. [*Id.*]

Ten years after Jackson pled guilty, the Supreme Court held in *McDonnell v. United States* that an "official act" is a "decision or action [by a public official] on a 'question, matter, cause, suit, proceeding or controversy.'" 579 U.S. 550, 574 (2016). In light of *McDonnell*, Jefferson filed a successful habeas petition, which was granted with respect to his bribery-related actions with Jackson. [DE 175 at 2539]. In response, Jackson likewise petitioned the District Court for the Eastern District of Virginia to vacate his bribery and conspiracy convictions, which was granted on March 27, 2019. [*Id.*].

On November 8, 2024, Cadle served subpoenas duces tecum on third parties SmartCopper Broadband, Inc., SmartCopper KY LLC, and David Harper (collectively, "third parties") under Fed. R. Civ. P. 45, seeking production of documents related to the money judgment against Jackson. [DE 170]. The subpoena duces tecum served fourteen requests ("subpoena requests") on the third parties, including:

1. The Articles of Organization, operating agreement, and any amendments for SmartCopper (KY) LLC.

2. All documents reflecting the ownership structure of SmartCopper (KY) LLC, including membership interests and any transfer of ownership from the date of organization to present.

3. Documents identifying all current and former members, managers, and employees of SmartCopper (KY) LLC, including their roles and responsibilities from the date of organization to present.

4. All financial statements, including balance sheets, income statements, and cash flow statements, from the date of organization to the present.

5. All federal, state, and/or local tax returns prepared and/or filed by SmartCopper (KY) LLC from the date of organization to the present.

6. Documents identifying any assets real or personal, tangible or intangible, owned by SmartCopper (KY) LLC, including but not limited to real estate, vehicles, equipment, and intellectual property from the date of organization to present.

7. All documents relating to the sale, transfer, gift, or other disposition of any asset realt [sic] or personal, tangible or intangible, that has or had a value of $5,000.00 or more at any time from the date of organization to present.

8. All records of financial transactions, including bank statements, loan agreements, and records of credit facilities, from the date of organization to the present

9. All contracts or agreements or equivalent of the same entered into by SmartCopper (KY) LLC, including but not limited to those with Vernon Jackson, David W. Harper, or affiliated entities regardless of whether or not the contract, agreement, or equivalent of the same is still in effect.

10. Documents detailing any distributions, draws, or other transfers of funds made to or for the benefit of any current or former members or managers of SmartCopper (KY) LLC.

11. Any documents indicating any current or previous relationship or affiliation between SmartCopper (KY) LLC and SmartCopper Broadband Inc

12. All documents relating to the sale, transfer, gift, disposition, and/or hypothecation of any membership interest of SmartCopper (KY) LLC from the date of organization to present.

13. All documents relating to any current or former affiliate, subsidiary, parent, brother, or sister entity at any time from the date of organization to present.

14. All communications by, between, or among SmartCopper (KY) LLC or any of its current or former agents or affiliates and Vernon Jackson and/or David W Harper or any of their agents or any entity currently or previously owned, controlled, or managed by or for either of their benefit.

[DE 176-1 at 2550–52]. Jackson objected to the subpoena requests via email, stating, "[a]s the founder, chief executive officer and sole director of SmartCopper Broadband Inc ("SmartCopper"), which is the sole member of SmartCopper (KY) LLC ("Ky Sub"), and on their behalf, I hereby object to the respective requests for production made on SmartCopper and Ky Sub, and their legal counsel, David W. Harper." [DE 174-1]. He also objected on grounds that the subpoena requests were (i) made without any foundation to a lawful and proper purpose, (ii) burdensome and without any parameters as to scope and relevancy, (iii) trade secrets and other proprietary information to which Plaintiff is not entitled, (iv) intrusive to the privacy rights of third parties, and (v) "nothing more than a fishing expedition without a lawful license." [*Id*. 2530].

4

Following this email communication, Jackson filed a Rule 60 motion for relief from judgment and order ("Motion for Relief"), requesting that the Court set aside its July 14, 2017 grant of summary judgment. [DE 175]. As grounds for the motion, Jackson argued that the 2017 judgment was based on an earlier judgment that had been reversed or vacated, and therefore he should be relieved from judgment under Fed. R. Civ. P. 60(b)(5). [DE 175 at 2536]. Cadle, meanwhile, filed a motion to compel third parties to respond to subpoenas duces tecum ("motion to compel"). [DE 174]. In response to the motion to compel, Jackson objected on the same grounds to all fourteen subpoena requests, stating, "I object to answering interrogatories until the Court rules online [sic] motion to set aside the judgment because my conviction was set aside by the federal Court." [DE 176 at 2545–47]. The matter was then referred to Magistrate Judge Lindsay to conduct any hearings necessary for the resolution of the motion to compel. [DE 179].

After Jackson objected to the motion to compel, the Court denied Jackson's motion for relief from the judgment, finding that Jackson's near six-year delay in filing the motion was not "within a reasonable time" as required by Fed. R. Civ. P. 60(c)(1). [DE 186 at 2586]. Accordingly, the 2017 judgment against Jackson remained in effect. Seeing that the grounds for Jackson's objections to the motion to compel were now moot after the Court denied Jackson's motion for relief, the Magistrate Judge held a telephonic status conference ("TSC") to try to resolve this discovery dispute. [DE 190]. At the TSC, Jackson took the position that Cadle bears the burden of demonstrating that his discovery efforts would benefit iGate, for whose benefit the judgment exists, and that this discovery effort is not in iGate's interest. [DN 190 at 2592].

On July 10, 2025, the Magistrate Judge issued a memorandum and order overruling Jackson's objections and granting Cadle's motion to compel. [DE 192]. The Court explained, first, that Jackson lacks standing to object to the subpoena requests served on third parties absent a claim

of privilege. [*Id.* at 2622]. The Court noted that, generally, only the party to whom the subpoena is directed has standing to oppose it unless the subpoena requests privileged information. [*Id.* at 2622–23]. Because the subpoenas did not request privileged information, Jackson lacked standing to challenge them, and the Court noted that it could "end its inquiry" there. [*Id.* at 2623]. Nevertheless, the Court considered Jackson's other objections. With respect to Jackson's objection that the subpoena requests infringe on the privacy rights of the third parties and involve trade secrets and proprietary information [DE 174-1 at 2530; DE 190 at 2593], the Court explained that there is no general constitutional right to nondisclosure of personal information and that Jackson does not have a right to hinder discovery by simply claiming that the requests seek sensitive information. [DE 192 at 2624]. With respect to Jackson's objection that Cadle failed to show that his discovery efforts would benefit iGate, the party for whose benefit the judgment exists [DE 190 at 2592], the Court explained that the discovery sought—financial information about third parties owned by Jackson—is relevant to understanding whether Jackson has diverted assets through third parties to avoid enforcement of the judgment. [DE 192 at 2625]. Finally, the Court explained that Jackson's remaining objections constitute impermissible boilerplate objections, including that the subpoena requests are "burdensome and without any parameters as to scope and relevancy," a "fishing expedition without a lawful license," and "made without any foundation to a lawful and proper purpose." [*Id.*].

Jackson then timely objected to the Magistrate Judge's order under Fed. R. Civ. P. 72(a). [DE 194]. He requests that the order be set aside and states the following objections: (1) Cadle's attempt to enforce the underlying judgment "relates to an unlawful effort to collect on a liability for which Defendant Jackson cannot be liable under the [Indiana Business Corporation Law ("IBCL")]" [DE 194-1 at 2648; DE 194 at 2637–38]; (2) Cadle seeks to enforce the judgment

derivatively on behalf of iGate, and iGate would be required to indemnify Jackson, which would result a "circular transfer of monies" [DE 194-1 at 2650; DE 194 at 2639]; (3) the order gives "short shrift to Defendant Jackson's repeated objections that the Subpoenas are not in iGate's interests" [DE 194 at 2638; DE 194-1 at 2651–52]; (4) a special litigation committee established by Jackson and consisting of three "disinterested directors" determined "that the Subpoenas and the Subpoenas Order are not in the best interests of iGate" [DE 194-1 at 2652; DE 194 at 2640]; and (5) the Magistrate Judge erred in denying Jackson's objection as to the "relevancy of certain information sought and the applicability of the privilege as to certain information held by certain third parties . . . ." [DE 194 at 2639].

While awaiting the Court's ruling on his objections, Jackson also moved for the Court to stay the order granting the motion to compel until the Court rules on the objections. [DE 197]. He has since filed three additional motions in opposition to the post-judgment discovery and the judgment itself. First, he filed a motion to dismiss post-judgment discovery proceedings and stay enforcement of the judgment [DE 201], in which he seeks dismissal of "the pending discovery proceedings commenced through Plaintiff's Post-Judgement Requests to Judgment Debtor" and a stay of "all execution, discovery and other rights and remedies . . . for the enforcement of the Judgment existing derivatively on behalf of iGate Incorporated against Defendant Jackson." [DE 201 at 2690 (citation omitted)]. Second, he filed a motion to quash the subpoena issued to Warner, arguing that notice of the subpoena was not provided to Jackson as required by Rule 45(a)(4) and that this failure is prejudicial to Jackson. [DE 204 at 2714]. He then filed a corrected motion of his motion to quash, which objects to the subpoena issued to Warner and seeks a protection order under Fed. R. Civ. P. 26(c). [DE 207].

Accordingly, before the Court are four motions by Jackson: (1) the objections to the Magistrate Judge's order granting the motion to compel [DE 194]; (2) the motion to stay the order granting the motion to compel [DE 197]; (3) the motion to dismiss post-judgment discovery proceedings and stay enforcement of the judgment [DE 201]; and (4) the amended motion [DE 204].

## II.    DISCUSSION

1.    <u>Objections to Magistrate Judge Order</u>

    *A.    Standard*

The Court referred this case to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(A) to resolve all non-dispositive matters. [DE 179]. The Magistrate Judge thus resolved Cadle's motion to compel [DE 192]. A party may object to a magistrate judge's non-dispositive order within fourteen days. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Judge Lindsay issued his Order on July 10, 2025. [DE 192]. Jackson timely filed his objections on July 22, 2025. [DE 194].

When a party timely objects to a magistrate judge's non-dispositive order, this Court "has the authority to 'reconsider' the determination, but under a limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (citing 28 U.S.C. § 636(b)(1)(A)). Under that standard, a magistrate judge's determination must be affirmed unless the objecting party shows that the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a) (implementing statutory directive). This Court reviews factual findings under the clearly erroneous standard. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd per curiam*, 19 F.3d 1432 (6th Cir. 1994) (unpublished table disposition) (internal quotation marks omitted). A finding is "clearly erroneous when it leaves the reviewing court with 'a definite and firm conviction that a mistake has been committed.'" *Tri-Star Airlines, Inc. v. Willis*

*Careen Corp. of Los Angeles*, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999) (quoting *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)). In applying the clearly erroneous standing, the reviewing court "should not ask whether the finding is the best or only conclusion that can be drawn from the evidence . . . [or] substitute its own conclusion for that of the magistrate judge." *Id.* Rather, the court must "determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable" *Id.*

The Court reviews the Magistrate Judge's *legal* conclusions under the contrary to law standard. *Gandee*, 785 F. Supp. at 686. A legal conclusion is contrary to law if it contradicts or ignores applicable precepts of law. *Id.* (citing *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983)); *see also Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007) ("An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" (quoting *Catskill Dev., LLC v. Park Place Ent. Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y.2002))). Thus, the Court must "exercise its independent judgment with respect to a Magistrate Judge's legal conclusions." *Gandee*, 785 F. Supp. at 686 (citing *Hawkins v. Ohio Bell Tel. Co.*, 93 F.R.D. 547, 551 (S.D. Ohio 1982), *aff'd without op.*, 785 F.2d 308 (6th Cir. 1986)).

B.    *Analysis*

i.    **Standing**

First, the Court reminds Jackson that the Magistrate Judge found that Jackson lacked standing to object to the third-party subpoena requests given that the subpoenas did not request privileged information and there was "no indication from [Jackson's] objections that [he] raised a privilege." [DE 192 at 2622]. The Court could have overruled Jackson's objections on that ground alone but chose to "entertain Jackson's other objections." [*Id.*]. Jackson does not object to the finding that he lacks standing, other than to claim that the Court erred in determining "the

applicability of privilege as to certain information held by certain third parties." [DE 194 at 2639]. Without further elaboration as to why he believes the Court erred in determining that there was not a claim of privilege, Jackson has not shown how the finding that he lacks standing is clearly erroneous or contrary to law.

Moreover, the Magistrate Judge correctly explained that "absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty." *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002) (citing *Clayton Brokerage Co., Inc. of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D. Md.1980)). Only "where a party successfully asserts '"some personal right or privilege with regard to the documents sought'"" will that party have standing. *Hi-Vac Corp. v. Coley*, No. 2:23-CV-4184, 2025 WL 286490, at *4 (S.D. Ohio Jan. 24, 2025) (internal quotation marks omitted) (quoting *Mann v. Univ. of Cincinnati*, 114 F.3d 1188 (6th Cir. 1997)); *see also* 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." (footnote omitted)). District courts in this Circuit regularly apply this rule to deny challenges to subpoenas served on nonparties without even considering the merits of the challenges. *See, e.g.*, *Riding Films, Inc. v. Doe*, No. 2:13-CV-46, 2013 WL 3322221, at *6 (S.D. Ohio July 1, 2013) ("[O]nly the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden") (citation omitted); *J.B. Hunt Transp., Inc. v. Adams*, No. 04-CV-70347, 2007 WL 789042, at *2 (E.D. Mich. March 14, 2007) ("Without addressing the merits of J.B. Hunt's arguments, the court finds that J.B. Hunt lacks standing to move to quash the . . . subpoenas. [The nonparty recipient] itself has not objected to the subpoenas or moved to quash them."); *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598, 2016 WL 3094031, at *4 (W.D.

Ky. June 1, 2016) (finding that plaintiff lacked standing to challenge subpoenas served on nonparties when he did not assert a claim of privilege and noting that "the Court need not examine the merits of the motion to quash").

As the Magistrate Judge correctly stated, Jackson's initial objections to the motion to compel did not raise a privilege. In his current objections to the Magistrate Judge's order, Jackson still fails to explain how the subpoenas request privilege information. Moreover, there is no indication in the subpoena requests themselves that they seek privileged information. Accordingly, because the subpoenas were not served on Jackson himself, he lacks standing to object to them. The Magistrate Judge's finding on this issue was therefore neither clearly erroneous nor contrary to law, and the Court could end its inquiry here. Nonetheless, for purposes of completeness, the Court will entertain Jackson's objections.

### ii.        Jackson's Objections

Jackson first objects on the ground that Cadle's attempt to enforce the underlying judgment "relates to an unlawful effort to collect on a liability for which Defendant Jackson cannot be liable under the IBCL" [DE 194-1 at 2649; DE 194 at 2637–38]. He argues that because Cadle is attempting to collect a derivative judgment on behalf of iGate, and because iGate is incorporated in Indiana, the IBCL applies. [DE 194 at 2637–38]. He argues that Cadle "seeks a result on behalf of iGate that the IBCL prohibits iGate itself from seeking." [DE 194-1 at 2649]. In support of this, he points to Ind. Code § 23-1-35-1(e), which provides that a director cannot be liable for any action taken as a director unless "(1) the director has breached or failed to perform the duties of the director's office in compliance with this section; and (2) the breach or failure to perform constitutes willful misconduct or recklessness." Ind. Code § 23-1-35-1(e). Thus, according to Jackson, "[n]either requirement allowing Defendant Jackson to be liable under the IBCL is met" and Cadle

may not "seek to enforce the Judgment Reaffirmed in violation of applicable Indiana law . . . ." [DE 194-1 at 2650]. In other words, Jackson maintains that the information sought by the subpoena requests cannot be relevant when the purpose of the requests is "to further an unlawful act on behalf of a principal that is itself directly prohibited from doing that very act." [DE 194 at 2638].

Jackson's first objection fails for several reasons. First, the Sixth Circuit has made clear that, in objecting to a Magistrate Judge's findings, "parties are precluded from raising 'new arguments or issues that were not presented to the magistrate.'" *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)). Thus, "an issue not actually presented to a magistrate judge is forfeited." *AES-Apex Emp. Servs., Inc. v. Rotondo*, 924 F.3d 857, 867 (6th Cir. 2019). Jackson did not argue before the Magistrate Judge that enforcement of the judgment would violate the IBCL or that he could not be liable under the IBCL. [*See* DE 190; DE 174-1]. While he did argue that the subpoena requests were "made without any foundation as to a lawful and proper purpose," [DE 174-1 at 2530], he offered no grounds on which the requests could be considered unlawful. Accordingly, the Magistrate Judge did not have the opportunity to consider Jackson's argument that underlying judgment is invalid under the IBCL and therefore that Cadle cannot seek to enforce it. Because Jackson failed to raise this argument, it has been forfeited.

Second, in making this objection, Jackson points to no error by the Magistrate Judge in the post-judgment order granting the motion to compel. Rather, his objection rests on the contention that the *underlying judgment* against Jackson is unlawful under the IBCL. Jackson is not permitted to use his objection to a post-judgment subpoena to re-litigate the merits of the underlying judgment. Under the law-of-the-case doctrine, "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Burley v. Gagacki*, 834 F.3d 606,

12

618 (6th Cir. 2016) (citations omitted). "Thus, like the doctrines of claim and issue preclusion, law-of-the-case is designed to "prevent[] the relitigation of an issue once there has been a judgment on the merits." *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 338–39 (6th Cir. 2016) (citing *Bowles v. Russell*, 432 F.3d 668, 676 (6th Cir. 2005)). This reflects the principle that once a claim is reduced to a final judgment, the validity of that claim is no longer open to inquiry. As the Supreme Court put it:

> A cause of action on a judgment is different from that upon which the judgment was entered. In a suit upon a money judgment for a civil cause of action, the validity of the claim upon which it was founded *is not open to inquiry, whatever its genesis*. Regardless of the nature of the right which gave rise to it, the judgment is an obligation to pay money in the nature of a debt upon the specialty.

*Milwaukee Cnty. v. M.E. White Co.*, 296 U.S. 268, 275 (1935) (emphasis added); *see also* 46 Am. Jur. 2d Judgments § 430 ("Upon rendition of a judgment, a cause of action merges into the judgment and that judgment is conclusive as to all matters which were litigated, which properly should have been litigated or might have been litigated in the original action."). Here, the Court already adjudicated the merits of the underlying claims against Jackson and granted summary judgment in favor of Cadle, concluding the issue of Jackson's liability. [DE 132; DE 133]. Nearly eight years later, the Court denied Jackon's motion for relief from judgment given that his delay in seeking relief was not "reasonable." [DE 186]. Thus, the original judgment stands, and the Court will not now revisit the merits of that judgment. For the same reason, the Magistrate Judge's decision to overrule Jackson's objection that the subpoena requests were "made without any foundation as to a lawful and proper purpose" was neither clearly erroneous not contrary to law.

Third and finally, Jackson maintains—albeit briefly and with little explanation—that because iGate is incorporated in Indiana, it is governed by Indiana law, and thus that this Court must apply the IBCL under *Erie*. [DE 194 at 2637]. Jackson's argument that the *Erie* doctrine

mandates that Indiana state law applies and prevents post-judgment discovery is misguided. *Erie* broadly stands for the proposition that "federal courts are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "But '[w]hen both a federal rule and a state law appear to govern a question before a federal court sitting in diversity,' federal courts apply a 'two-step framework' to determine which law controls." *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 463 (6th Cir. 2014) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421 (2010). Federal Rule of Civil Procedure 69 governs the execution of federal judgments and specifically provides that a judgment creditor "may obtain discovery from any person . . . *as provided in these rules or by the procedure of the state where the court is located*." Fed. R. Civ. P. 69(a)(2). The Rule thus clearly answers the question of whether Cadle may seek discovery from the third parties at issue in this case. The provision of the IBCL to which Jackson cites, meanwhile, governs the standard of conduct owed by directors to a corporation and the liability those directors face for actions they take in their capacity as directors. Ind. Code § 23-1-35-1(e). The provision sets forth no rules relating to enforcement of a judgment or the ability of a judgment creditor to seek discovery from third parties. Thus, there is no evidence that both a federal rule and a state law govern the question before the Court—whether Cadle may seek discovery from third parties in furtherance of the judgment in his favor. When it comes to discovery procedure, the Federal Rules govern the Court's decision.

Next, Jackson objects on the grounds that Cadle seeks to enforce the judgment derivatively on behalf of iGate, and iGate would be required to indemnify Jackson, which would result a "circular transfer of monies." [DE 194-1 at 2650; DE 194 at 2639]. He argues that iGate's articles of incorporation "provide mandatory indemnification to directors 'to the fullest extent authorized

14

by the IBCL'" and that the IBCL "authorizes the indemnification by iGate." [DE 194-1 at 2651]. Jackson maintains that, because of this indemnification provision, if he were to pay the judgment, he would "effectively pay[] himself," and therefore Cadle should not be permitted to move forward with his attempts to enforce the judgment. [*Id.* at 2650]. Once again, Jackson failed to raise this legal argument before the Magistrate Judge even though it was available to him at the time, so it is now forfeited. *See Murr*, 200 F.3d at 902 n.1 ("[T]he Magistrate Judge Act . . . does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate.").

Notwithstanding that fact, the objection also fails on the merits. Even if it is true that enforcement of the judgment will "result in a circular transfer of monies," Jackson points to no authority that precludes this. That is, he cites no support for his contention that a judgment creditor may not attempt to collect on a derivative judgment when that money will end up eventually reverting to the debtor. Without any authority to support his argument, he once again fails to show how the Magistrate Judge's findings were contrary to law. *See Goree v. United Parcel Serv., Inc.*, No. 14-cv-2505, 2015 WL 11120732, at *2 (W.D. Tenn. Oct. 5, 2015) ("A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure" (citing *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013))). Conversely, the Federal Rules and Sixth Circuit case law provide for broad post-judgment discovery. *See United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007) ("The Federal Rules expressly authorize discovery '[i]n aid of [a] judgment' in the manner otherwise 'provided in these rules,' and the courts have confirmed that '[t]he scope of postjudgment discovery is very broad." (citation omitted) (quoting Fed. R. Civ. P. 69(a); and then quoting *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir.1995))). In executing the judgment, the

judgment creditor is "entitled to 'utilize the full panoply of federal discovery measures' provided for under federal and state law to obtain information from parties and non-parties alike, including information about assets on which execution can issue or about assets that have been fraudulently transferred." *Andrews v. Raphaelson*, No. 5:09–cv–77, 2009 WL 1211136, at *3 (E.D. Ky. Apr. 30, 2009) (quoting *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561 (S.D.N.Y. 1977)). "The only limits on post-judgment discovery from a non-party by a judgment creditor are the limits that apply generally to all discovery requests to a non-party, including such concerns as relevancy and proportionality (or undue burden)." *Lucas v. Jolin*, No. 1:15-cv-108, 2016 WL 5844300, at *4 (S.D. Ohio Oct. 6, 2016).

In this case, Cadle—the judgment creditor—established that the requested documents are relevant because Jackson has control over the subpoenaed corporate entities.[2] [DE 174 at 2519]. Thus, corporate records, financial statements, tax returns, and transactional documents from those entities are relevant in determining whether Jackson has diverted assets to avoid collection of the judgment. [*Id.* at 2520]. Jackson's argument that enforcement of the judgment would result in a "circular transfer" [DE 194-1 at 2560] does not make the requested documents any less helpful in obtaining "information about assets on which execution can issue or about assets that have been fraudulently transferred." *See Andrews*, 2009 WL 1211136, at *3. At this stage, the Court is concerned with whether the subpoena requests are relevant to enforcing the existing judgment, not whether enforcement of the judgment would be futile. In fact, Indiana law does not guarantee indemnification, but rather provides that "[a] corporation *may* indemnify an individual made a party to a proceeding because the individual is or was a director against liability incurred in the

---

[2] Jackson confirms his control over these entities in his email correspondence with Cadle, stating that he is "the founder, chief executive officer, and sole director of SmartCopper Broadband Inc ('SmartCopper'), which is the sole member of SmartCopper (KY) LLC ('Ky Sub') . . . ." [DE 174-1 at 2530].

proceeding . . . ." Ind. Code § 23-1-37-8 (emphasis added). The provision sets forth numerous requirements for the director to be indemnified, including that he acted "in good faith," and that he "reasonably believed" that his conduct in his official capacity with the corporation was in the corporation's best interests. *Id.* Thus, there is no guarantee that Jackson will be indemnified. The possibility that iGate *may* indemnify Jackson with proceeds from the judgment in the future does not motivate the Court to frustrate enforcement of the judgment.

Jackson next objects on the ground that the Order gives "short shrift to [his] repeated objections that the Subpoenas are not in iGate's interests" [DE 194 at 2638; DE 194-1 at 2651–52]. He maintains that the Court did not ask Cadle "about how the Subpoenas advanced iGate's interests," nor did Cadle offer such information. [DE 194-1 at 2652]. He argues that the Magistrate Judge incorrectly placed the burden on him to establish that the subpoenas are not in iGate's interests, and that the resulting order "assumed the Subpoenas are in iGate's interests without any finding as to why or how." [*Id.*].

In the order granting the motion to compel, the Magistrate Judge considered Jackson's objection that "[Cadle] bears the burden of demonstrating that his discovery efforts would benefit iGate[, for] whose benefit . . . the judgment exists, and that this discovery effort is not in iGate's interest." [DE 192 at 2620]. The root of Jackson's objection is that because Cadle secured the derivative judgment on behalf of iGate, any discovery efforts in pursuit of collecting that judgment must be in iGate's interests. Given that Jackson maintains that the subpoena requests do not serve the proper interest, the Court correctly noted that this objection "hinges on the relevancy of the discovery sought in the subpoena requests." [*Id.* at 2624]. When it comes to post-judgment discovery, judgment creditors can seek discovery from third parties, but "[t]he party seeking such discovery must make 'a threshold showing of the necessity and relevance' of the information

sought." *Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*, No. 5:11-CV-281-JMH, 2012 WL 5868903, at *2 (E.D. Ky. Nov. 20, 2012) (quoting *Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993)). The Magistrate Judge appropriately found that Cadle made this threshold showing by explaining that Jackson has control over the subpoenaed entities, so financial information related to those entities are relevant in "determining whether Jackson has diverted assets or income through the third parties to avoid enforcement of the judgment." [DE 192 at 2625].

Jackson points to no factual or legal error the Magistrate Judge made in finding that the information sought is relevant to satisfying the judgment. He simply asserts that the Court did not adequately consider his objection, yet he offers no facts that the Court failed to consider, nor any improper legal conclusions made by the Court. After reviewing the Magistrate Judge's order, the Court is not left with "a definite and firm conviction that a mistake has been committed." *See Tri-Star Airlines, Inc.*, 75 F. Supp. At 839. Moreover, the Court is satisfied that the Magistrate Judge did not "fail[] to apply or misapply[y] relevant statues, case law or rules of procedure." *See Botta*, 475 F. Supp at 185. Accordingly, the Magistrate Judge's decision to overrule Jackson's objection that the subpoena requests are not in iGate's interest is neither "clearly erroneous" nor "contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a).

Next, Jackson objects on the ground that a special litigation committee ("SLC") established by Jackson and consisting of three "disinterested directors" determined "that the Subpoenas and the Subpoenas Order are not in the best interests of iGate." [DE 194-1 at 2652; DE 194 at 2640]. While this objection partially recycles Jackson's last objection, the Court will independently consider it. Jackson explains that "[a] day after the filing of the Subpoenas Order . . . [he] as iGate's sole director established a Special Litigation Committee comprised of three (3) disinterested

directors as defined by the IBCL." [DE 194-1 at 2646]. He further explains that this "Disinterested Director Committee made a determination that the Subpoenas and the related Subpoenas Order were not in the best interests of iGate under the IBCL." [*Id.* at 2647]. He attaches a letter written by the SLC dated July 17, 2025, which concludes that:

> The Subpoenas are not in iGate's best interests for the several reasons outlined above. The efforts to obtain discovery through the Subpoenas should be dismissed as not in the best interests of iGate, as contemplated by I.C.§ 35-1-32-4. The Committee wishes [Jackson] well in [his] efforts to defend [his] interests and respond to the efforts by Plaintiff Cadle to collect ostensibly for iGate a Derivative Judgment for which iGate must indemnify him.

[DE 193-2 at 2635]. Jackson argues that this finding is entitled to a "conclusive presumption" that its determination is correct, and thus that the Court should prevent Cadle from moving forward with the post-judgment discovery requests. [DE 194-1 at 2652].

At the outset, it is not clear that the Court must consider this late-presented letter. In *AES-Apex Employer Services, Inc. v. Rotondo*, the Sixth Circuit considered an appeal of a district court decision in which the court declined to consider new evidence offered after the magistrate judge issued his report and recommendation ("R&R"). 924 F.3d at 867. Akouri—the appellant—sought permission with the district court to file a supplemental brief with new depositions attached after the magistrate judge finished the R&R. *Id.* The district court denied Akouri permission to file the new evidence, given that "Akouri had the opportunity to request these depositions during federal discovery but did not [, and] [h]ad it sought these depositions, it then could have used them to develop additional arguments and included them in the various summary judgment motions." *Id.* The district court also explained that "to the extent that this evidence would lead to new legal arguments, . . . Akouri had forfeited those arguments." *Id.* In reviewing the district court's decision, the Sixth Circuit found that its reasoning was not an abuse of discretion, particularly considering that docket control "rests in the 'sound discretion of the district court.'" *Id.* (quoting *In re Air*

19

*Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996) (alteration omitted)). Here, too, Jackson could have established the SLC earlier, but waited to do so until after the Magistrate Judge granted the motion to compel, preventing the Magistrate Judge from considering the letter. [*See* DE 194-1 at 2646]. As one district court put it, "it would be illogical to conclude that a magistrate judge's factual finding was clearly erroneous based on evidentiary material that was not before the magistrate judge for review." *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-CV-116, 2013 WL 992125, at *6 (S.D. Ohio Mar. 13, 2013); *see also See Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("The district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact."). At the same time, the Sixth Circuit has recognized that "although the Federal Magistrate's Act does not expressly allow the district court to take new evidence in non-dispositive matters referred to a magistrate judge, 'it is not clearly forbidden either if there is good cause for revisiting the matter.'" *Banner v. City of Flint*, 99 F. App'x 29, 35 (6th Cir. 2004) (quoting *Conetta v. National Hair Care Centers, Inc.*, 236 F.3d 67 (1st Cir. 2001)). Accordingly, the Court will consider the letter even though it is not required to do so.

The IBCL provides that the board of directors of a corporation "may establish a committee consisting of three (3) or more disinterested directors or other disinterested persons to determine . . . whether it is in the best interests of the corporation to pursue [a] right or remedy, if any, or to dismiss a proceeding that seeks to assert that right or remedy on behalf of the corporation." Ind. Code. § 23-1-32-4(a). It further provides that:

> If the committee determines that pursuit of a right or remedy through a derivative proceeding or otherwise is not in the best interests of the corporation, the merits of that determination shall be presumed to be conclusive against any shareholder making a demand or bringing a derivative proceeding with respect to such right or remedy, unless such shareholder can demonstrate that:

> (1) the committee was not "disinterested" within the meaning of this section; or
>
> (2) the committee's determination was not made after an investigation conducted in good faith.

Ind. Code § 23-1-32-4(c). Jackson thus argues that the SLC's determination that the subpoenas are not in the best interests of the corporation is presumed to be conclusive against Cadle's attempt to enforce the judgment.

Jackson's attempt to rely on the opinions of the late-formed SLC fails for several reasons. First, the timing of the SLC letter casts doubt on its efficacy. Generally, "a corporation may appoint a special litigation committee to investigate claims presented in a derivative action." *Booth Fam. Tr. v. Jeffries*, 640 F.3d 134, 138 (6th Cir. 2011). Then, if the SLC determines that "pursuit of a right or remedy . . . is not in the best interests of the corporation," no shareholder can challenge that determination unless he can "demonstrate either that the committee was not 'disinterested,' or the committee's determination was not made after an investigation conducted in 'good faith.'" Ind. Code § 23-1-32-4 cmt. (c). Such committees are formed for the purpose of "delegat[ing] to a committee of disinterested persons the board's power to control the litigation." *Kokocinski on behalf of Medtronic, Inc. v. Collins*, 850 F.3d 354, 362 (8th Cir. 2017); *see also Kesling v. Kesling*, 83 N.E.3d 111, 121 (Ind. Ct. App. 2017) (noting that after an SLC determines that "pursuit of a right or remedy is in the corporation's best interests . . . the corporate board . . . may then assume control of the litigation of any viable claims at that point"). As such, SLCs are typically formed pre-judgment, while litigation is ongoing, in an effort to determine whether the derivative action

should proceed or be dismissed. *See, e.g.*, *Cutshall v. Barker*, 733 N.E.2d 973 (Ind. Ct. App. 2000); *Kesling v. Kesling*, 83 N.E.3d 111 (Ind. Ct. App. 2017).[3]

Under Indiana law, SLCs have the power to determine whether it would be in the best interests of a corporation to "pursue" a claim, not to erase a judgment on an already litigated claim. *See* Ind. Code § 23-1-32-4. The Court is not aware of—and Jackson does not offer—any case in which an SLC was formed *after* judgment was entered, nor in which an SLC attempted to alter the outcome of past litigation. As Cadle notes, "once liability is determined, the prevailing shareholder is not engaging in 'derivative' litigation; he is enforcing a corporate asset—a judgment—already recovered." [DE 195 at 2660]; *see also* 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1840 (3d ed. 1998) ("[A] judgment on the merits in a [derivative] action is a binding determination of the corporate right."). If the iGate board believed the derivative action was not in iGate's best interest, the time to establish the SLC and offer such an opinion was during the pendency of the litigation, not after the litigation concluded. Jackson was certainly aware of his ability to form an SLC, given that he argued in his original motion to dismiss that Cadle was required to make a pre-suit demand on the iGate board of directors to give iGate an opportunity to appoint a committee of disinterested directors. [DE 4-2 at 42–43; DE 12 at 108]. The Court rejected this argument, finding that Cadle had adequately pled demand futility and noting that a corporation

---

[3] Courts also take issue with SLCs that delay in their investigations and regularly deny motions to stay proceedings for SLCs to conduct their investigations when there are delays in the SLCs formation. *See, e.g.*, *Miller v. Anderson*, No. 5:20CV1743, 2021 WL 4220780, at *1 (N.D. Ohio Sept. 16, 2021) (denying a stay based on a finding that FirstEnergy offered no compelling justification for its delayed formation of the SLC); *In re Abbott Lab'ys Infant Formula S'holder Derivative Litig.*, No. 22 CV 05513, 2025 WL 509286, at *4 (N.D. Ill. Feb. 14, 2025) ("Courts have found that corporations are not entitled to a stay if it is being used to delay the litigation, as that could result in abusing the timing of forming the special litigation committee and the speed of its investigation to stall derivative litigation."); *Maccoumber v. Austin*, No. 03 C 9405, 2004 WL 1745751, at *4 (N.D. Ill. Aug. 2, 2004) ("The board must actually investigate the allegations in the demand or if delaying the investigation the delay must be reasonable."). These cases reflect the principle that the formation of an SLC should not be calculated to improperly manipulate the course of litigation.

can establish a disinterested committee "even after a suit is filed without a demand according to [Indiana Code] section 23-1-32-2 . . . ." [DE 75 at 565 (citing *In Re Guidant*, 841 N.E.2d 571, 575 (Ind. 2006)]. Still, Jackson waited more than ten years after that opinion was entered—and only after a final judgment was entered—to form an SLC.

Second, the Court is not convinced that the SLC's investigation was "conducted in good faith" as required under Ind. Code. § 23-1-32-4(c)(2). While "good faith" is not defined in the statute, the official comments indicate that "good faith" will "depend in part on the adequacy and appropriateness of the Committee's investigatory procedures . . . ." § 23-1-32-4 cmt. (c). The Indiana Supreme Court has further indicated that "good faith comprises both the methodology *and* the substance of the SLC's investigation into the shareholders' derivative claims." *TP Orthodontics, Inc. v. Kesling*, 15 N.E.3d 985, 992 (Ind. 2014). Accordingly, a "shareholder challenging the good faith of an SLC's investigation must prove that the SLC's investigation was 'so restricted in scope, so shallow in execution, or otherwise so *pro forma* or halfhearted as to constitute a pretext or sham.'" *Cutshall v. Barker*, 733 N.E.2d 973, 982 (Ind. Ct. App. 2000) (quoting *Auerbach v. Bennett*, 393 N.E.2d 994, 1003 (N.Y. 1979)). "Courts considering a derivative action will not defer to a special litigation committee whose investigation lacked the thoroughness which is necessary for a truly objective and meaningful recommendation and no deference is due to the extent that the SLC does not investigate and analyze a claim." *Washington Frontier League Baseball, LLC v. Zimmerman*, No. 1:14-CV-01862, 2018 WL 2416419, at *12 (S.D. Ind. May 29, 2018) (quoting 19 Am. Jur. 2d Corporations § 1966).

As Cadle notes, "the [SLC] was formed and appointed on July 11, 2025—years after the litigation was over and judgment was entered—and Jackson selected all three SLC members after personal liability had already been adjudicated[.]" [DE 195 at 2661]. The timing of the SLC's

investigation alone calls into question whether it was conducted in good faith. As explained above, the SLC was not formed until long after judgment was entered against Jackson. Even more concerning, it was not formed until after the Court granted Cadle's motion to compel the third parties to respond to the subpoena requests. Then, only six days after Jackson formed the SLC, the SLC shared the results of its investigation, which conveniently resulted in a determination exactly in keeping with Jackson's argument that he should not be liable for the underlying judgment.[4] That determination hardly appears to be a "truly objective and meaningful recommendation." *Washington Frontier*, 2018 WL 2416419, at *12 (quoting 19 Am. Jur. 2d Corporations § 1966).

Moreover, the SLC's letter is severely lacking and offers no insight into the adequacy of the investigation that might assuage the Court's concerns as to its objectivity. The brief letter provides little to no explanation as to how the investigation was conducted, nor does it provide insight into the makeup of the committee. The letter asserts only that "no basis exists to allege the Committee's work has not been in good faith" and that "each member of the Committee is 'disinterested.'" [DE 193-2 at 2634]. Without more, these amount to bald assertions that the SLC was independent and conducted its inquiry in good faith. *See Zapata Corp. v. Maldonado*, 430 A.2d 779, 788 (Del. 1981) (explaining that an SLC may file a motion to dismiss after "an objective and thorough investigation of a derivative suit" and "[t]he motion should include a *thorough written record of the investigation and its findings and recommendations*" (emphasis added)). The Court is not required to defer to the findings of the SLC when there is no evidence that it conducted a thorough and independent investigation. *See TP Orthodontics*, 15 N.E. at 993 (finding that an SLC's heavily redacted report could not be relied upon to conclude that the SLC conducted a good

---

[4] Jackson states that he established the SLC on July 11, 2025, the day after the Magistrate Judge granted the motion to compel. [DE 194-1 at 2646]. The SLC letter is dated July 17, 2025—only six days later. [DE 193-2 at 2631].

faith investigation and determining that a full, unredacted report was necessary to provide the "information necessary" to show that the SLC conducted a good faith investigation); *see also Auerbach*, 393 N.E.2d at 1003 (explaining that "the court may properly inquire as to the adequacy and appropriateness of the [SLC's] investigative procedures and methodologies" and that corporate representatives are "expected to show that the areas and subjects to be examined are reasonably complete and that there has been a good-faith pursuit of inquiry into such areas and subjects"). In this case, the SLC's letter—written after a six-day "investigation" and offering no details as to the nature of the investigation—gives no evidence that the investigation was conducted either independently or adequately. For all the above reasons, the Court declines to defer to the SLC's finding that the subpoena requests are not in iGate's best interests and thus overrules Jackson's objection on those grounds.

Finally, Jackson objects on grounds that the Magistrate Judge erred in denying Jackson's objection as to the "relevancy of certain information sought and the applicability of the privilege as to certain information held by certain third parties . . . ." [DE 194 at 2639]. As the Court has already explained, the Magistrate Judge's findings—that the third-party subpoena requests were relevant to satisfying the judgment and that the requests did not include privilege information—were neither clearly erroneous nor contrary to law. Jackson offers no additional support for his argument that the Magistrate Judge erred, so the Court will not revisit its determination.

Accordingly, the Court overrules each of Jackson's objections and finds that the Magistrate Judge did not err in granting the motion to compel.

2. <u>Motion to Stay</u>

While awaiting this Court's ruling on his objections to the Magistrate Judge's order, Jackson moved the Court to stay immediately the responses required by the order. [DE 197].

25

Because the Court has now ruled on Jackson's objections, Jackson's argument in support of the stay is no longer applicable. Accordingly, the Court will deny as moot Jackson's motion for an immediate stay.

3.     <u>Motion to dismiss post-judgment discovery proceedings and stay enforcement of the judgment</u>

Next, Jackson filed a "motion to dismiss post-judgment discovery proceedings and stay enforcement of judgment." [DE 201-1]. He seeks:

> (1) dismissal of the pursuit by [Cadle] of the rights and remedies under CR 69, including discovery through Plaintiff's Post-Judgment Requests to Judgment Debtor, belonging derivatively to iGate Incorporated ("iGate") and (2) a stay, as a final and appealable judgment under CR 54, of all execution, discovery and other rights and remedies, whether existing under CR 69 or otherwise by law, for the enforcement of the Judgment held by Plaintiff derivatively on behalf of iGate against Defendant Jackson.

[*Id.* at 2692 (citations omitted)]. Jackson explains that, since the filing of his objections to the Magistrate Judge's order, he and iGate "have entered into an Agreement of Mutual Setoff and Satisfaction . . . ." [*Id.* at 2693]. The agreement ("setoff agreement" or "agreement") [DE 199-2] provides, in part:

> 1. **<u>Mutual Set-Off</u>**. Jackson hereby sets-off his liability to iGate under the Derivative Judgment (the "**<u>Judgment Debt</u>**") against the obligation of iGate to indemnify Jackson against the Derivative Judgment for the same amount (the "**<u>Indemnity Obligation</u>**"); and iGate hereby sets-off its Indemnity Obligation to Jackson against Jackson's liability to it under the Judgment Debt.
>
> 2. **<u>Satisfaction and Accord</u>**. Each of Jackson and iGate irrevocably acknowledge to and agree with the other that this Agreement constitutes full satisfaction and accord relating to the Judgment Debt and the Indemnity Obligation, to the fullest extent permitted by law.

[*Id.* at 2684]. Jackson states that this setoff agreement "is a valid exercise of authority by the iGate Board of Directors generally, and its 3 disinterested directors specifically, in determining whether and to what extent to pursue any remedy belonging to iGate under the Derivative Judgment." [DE

201-1 at 2693]. He therefore argues that the setoff agreement—ostensibly authorized by the same SLC that determined that the subpoenas were not in iGate's best interests—is "entitled to a conclusive presumption." [*Id.* at 2694]. He also argues that, under the business judgment rule, the Court must defer to the setoff agreement because it "represents a business judgment made by the Board regarding the intrinsically corporate internal affairs of (i) a threat to iGate's best interests and (ii) an obligation of indemnification in favor of me to which [Jackson is] clearly entitled." [*Id.* at 2695]. Accordingly, he apparently argues that the Court should—by its own accord—thwart enforcement of the judgment and all discovery efforts by Cadle in furtherance of satisfying the judgment simply because the agreement purports to indemnify Jackson for the judgment he owes.

Jackson's attempt to use the setoff agreement to evade a final judgment and any discovery sought to enforce that judgment fails for largely the same reasons as his objections, and the Court will only briefly rehash them here. First, to the extent that Jackson asks the Court to adopt the findings of the SLC, the Court will not do so. As already stated, the determinations of an SLC cannot erase a final judgment after the fact by simply declaring that judgment satisfied. *See* Ind. Code § 23-1-32-3(a) ("A [derivative proceeding] may not be discontinued or settled without the court's approval."). Rather, the IBCL authorizes a board of directors to form a committee to determine whether to "pursue" a claim. Ind. Code § 23-1-32-4(a)(2). The final judgment entered in this case concluded the issue of Jackson's liability and now governs the parties' rights; the underlying action can no longer be litigated. *See* 46 Am. Jur. 2d Judgments § 430. Moreover, for all the reasons asserted above, the Court does not believe that the SLC conducted an independent and good faith investigation. Thus, even if an SLC's post-hoc determination that a lawsuit is not in the best interests of the corporation *could* alter a final judgment, it would not do so here.

Second, the setoff agreement—under which iGate purports to set off its "Indemnity Obligation" to Jackson and agree that the judgment has been satisfied—cannot do what it claims to do. Under Indiana's indemnification statute, a corporation may only indemnify an individual if specific criteria are met; that is, if "the individual's conduct was in good faith" and "the individual reasonably believed . . . that [his] conduct was in [the corporation's] best interests . . . ." Ind. Code § 23-1-37-8(a). Moreover, indemnification is not permitted unless "authorized in the specific case after a determination has been made that indemnification . . . is permissible . . . because the director has met the standard of conduct set forth in [§ 23-1-37-8]." Ind. Code § 23-1-37-12(a). That determination can only be made by one of the procedures outlined in the indemnification statute, including:

(1) By the board of directors by majority vote of a quorum consisting of directors not at the time parties to the proceeding.

(2) If a quorum cannot be obtained under subdivision (1), by majority vote of a committee duly designated by the board of directors (in which designation directors who are parties may participate), consisting solely of two (2) or more directors not at the time parties to the proceeding.

(3) By special legal counsel:

(A) selected by the board of directors or its committee in the manner prescribed in subdivision (1) or (2); or

(B) if a quorum of the board of directors cannot be obtained under subdivision (1) and a committee cannot be designated under subdivision (2), selected by majority vote of the full board of directors (in which selection directors who are parties may participate).

(4) By the shareholders, but shares owned by or voted under the control of directors who are at the time parties to the proceeding may not be voted on the determination.

Ind. Code § 23-1-37-12(b). Jackson has not presented any evidence that one of these procedures was followed, nor has he presented a corporate finding that his conduct was in good faith or that

he reasonably believed that his conduct was in the best interests of the corporation. While the statute also allows a director to apply to the court for indemnification in certain circumstances, Jackson has not done so. *See* Ind. Code § 23-1-37-11. In short, there is no legally recognized indemnity obligation and thus there is nothing to "set off" against a federal judgment.

Lastly, Jackson cites no federal rule that provides for the remedies he seeks: dismissal of discovery proceedings and a stay of the enforcement of the judgment. He did not, for example, move to stay proceedings to enforce the judgment under Fed. R. Civ. P. 62 or move for relief from judgment under Fed R. Civ. P. 60. Rather, he simply asks the Court to halt enforcement of the judgment pursuant to a late-formed corporate agreement. Without presenting any valid legal basis for this request, the Court cannot grant it.

Accordingly, for all the reasons set forth above, the Court denies Jackson's motion to dismiss post-judgment discovery proceedings and stay enforcement of judgment.

### 4.    Motion to Quash and Amended Motion for Protective Order

Last, Jackson objects to the subpoena issued to Warner and asks the Court to "[e]nter a protective order barring or limiting discovery pursuant to Rule 26(c)." [DE 207 at 2734]. Jackson first filed a motion to quash pursuant to Fed. R. Civ. P. 45(a)(4) [DE 204], but later submitted a notice of correction and an amended motion after determining that "the correct procedural basis for the motion is Rule 45(d)(2)(B)." [DE 207]. The amended motion apparently seeks different relief from the original; while the original motion asked the Court to quash the subpoena [DE 204 at 2715], the amended motion asks the Court to "[e]nter a protective order barring or limiting discovery pursuant to Rule 26(c)." [DE 207 at 2735]. Yet, Jackson retains his argument from the original motion to quash that the subpoena was served on Warner before notice and a copy of the subpoena was served on Jackson, in violation of Rule 45(a)(4) [*Id.* at 2730]. He also adds

arguments that he has standing to challenge the subpoena served on a third party because he has a "claim of privilege or personal right." [*Id.* at 2721]. Finally, he argues that the subpoena requests would cause "annoyance, embarrassment, oppression, or undue burden or expense" on Warner and therefore the Court should enter a protective order. [*Id.* at 2733]. While Jackson now seeks a protective order under Rule 26, he also maintains that he is objecting under Rule 45. It is therefore unclear to the Court whether Jackson is moving the Court to quash the subpoena under Rule 45 or to enter a protective order under Rule 26. Accordingly, the Court will consider Jackson's argument under both rules.

### A.    Challenge Under Rule 45

First, Jackson's challenge to the subpoena served on Warner is a nonstarter under Rule 45 because Jackson lacks standing to object to or quash the subpoena. As the Court stated above, "a party ordinarily has no standing to challenge a subpoena to a non-party without first showing a claim of privilege or personal right exists in the information sought." *Polylok Inc v. Bear Onsite, LLC*, No. 3:12-CV-535, 2016 WL 7320889, at *1 (W.D. Ky. Dec. 15, 2016) (collecting cases); *Boodram v. Coomes*, No. 1:12CV-00057-JHM, 2016 WL 11333789, at *2 (W.D. Ky. Jan. 28, 2016) ("[A] party does not have standing to quash or object to a Rule 45 subpoena served on a non-party, unless the party claims a privilege or other personal right in regard to the requested documents."). "[A] party seeking to quash a subpoena bears a heavy burden of proof." *Underwood v. Riverview of Ann Arbor*, No. 08-CV-11024-DT, 2008 WL 5235992, at *1 (E.D. Mich. Dec. 15, 2008). Accordingly, courts have recognized that "vague[] reference[s]" to the information sought being privileged or personal is not sufficient to confer standing. *See, e.g.*, *Polylok*, 2016 WL 7320889, at *1 (finding that defendants lacked standing when they asserted only "a vague reference to the information sought by the Plaintiffs' subpoenas being 'potential work product

information'" and the court's review of the requests revealed "no evidence that the information requested is of such a personal and confidential nature that such a right or privilege exists").

Jackson's attempt to claim a privilege or personal right in the information sought is ineffective. First, he makes only vague references to the information sought being privileged or personal. For instance, he makes the broad claim, without pointing to any specific document requests, that "Cadle is using discovery proceedings as an investigation into Defendant Jackson's personal matters belonging to him as one of iGate's directors, over which disinterested directors have the only say-so regarding the pursuit and wisdom of that investigation." [DE 207 at 2731–32]. This is a far cry from the specific assertions of privilege or personal right found in cases where the party was found to have standing to object to non-party subpoenas. *See Halawani v. Wolfenbarger*, No. 07–15483, 2008 WL 5188813, at *1 (E.D. Mich. Dec.10, 2008) (finding that defendant had standing when he specifically stated that the request for personnel files and home addresses would invade his privacy); *Sys. Prods. & Sols., Inc. v. Scramlin*, No. 13-CV-14947, 2014 WL 3894385, at *7 (E.D. Mich. Aug. 8, 2014) (finding that defendant had standing when he stated that he had a personal interest in the nondisclosure of his own emails and phone records).

Second, the "personal right" Jackson claims to have in the information has already been rejected by the Court. He maintains that:

> Cadle is seeking information to interfere with and attempt to undermine and/or invalidate Defendant Jackson's personal right(s) granted to him under Indiana Law (IBCL§23-1-37-8) (which are contractual in nature) to be indemnified as a director of iGate, Inc., and his personal right(s) to participate in the process of "setting aside" the judgment against him initiated by iGate, Inc's independent and disinterested directors.

[DE 207 at 2732]. In other words, Jackson once again attempts to use his supposed indemnification right and the setoff agreement to "set aside" a valid judgment and hinder post-judgment discovery. The Court has rejected this argument in ruling on Jackson's other motions and will not entertain it

31

further. As a result, to the extent that Cadle either objects to or moves to quash the subpoena to Warner under Rule 45, the Court finds that he lacks standing.

Finally, to the extent that Jackson attempts to use Rule 45(a)(4) in support of a motion to quash, he is unsuccessful. Rule 45(a)(4) provides that "before [a subpoena] is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). Yet, "lack of notice" is not a basis on which the Court may quash a subpoena under Rule 45(d)(3). As such, courts decline to quash subpoenas under a Rule 45(a)(4) technical violation alone, without some showing of prejudice. *See McClendon v. TelOhio Credit Union, Inc.*, 2006 WL 2380601, at *3 (S.D. Ohio Aug. 14, 2006).  This is because "[t]he purpose of such notice is to afford other parties an opportunity to object to the production or inspection . . . ." *Id.* (quoting Fed. R. Civ. P. 45 advisory committee notes to 1991 amendment). Here, Cadle explains that the process server "proceeded with service before notice could be circulated, and [Cadle] discovered service had occurred only when Warner himself sent his August 30, 2025 objection letter. That letter simultaneously confirmed that Jackson had notice of the subpoena, as he was copied on it." [DE 205 at 2723]. Days later, Jackson filed his motion to quash. [DE 204]. That is, despite the technical violation, Jackson became aware of the subpoena shortly after it was served and had an opportunity to object. The violation therefore did not prejudice him and is not grounds to quash the subpoena.

### B.    *Motion for Protective Order Under Rule 26*

In contrast to a motion to quash, a motion for a protective order is available to "*a party* or any person from whom discovery is sought." Fed. R. Civ. P. 26(c) (emphasis added). The use of "a party" in the rule has been interpreted by courts to provide standing for a party to oppose discovery sought from third parties. *See Fleet Bus. Credit Corp. v. Hill City Oil Co., Inc.*, No. 01–

2417, 2002 WL 1483879, *2 (W.D. Tenn. June 26, 2002) ("Many district courts have acknowledged this aspect of the rule which allows a party to file a motion for protective order on behalf of a non-party"); *see also Schweinfurth v. Motorola, Inc.*, No. 05–cv–024, 2008 WL 4981380, *2 (N.D. Ohio Nov. 19, 2008) ("[C]ourts within the Sixth Circuit have interpreted [Rule 26(c)] to permit 'a party' . . . to seek a protective order [on a third-party's behalf]."). The court will therefore consider Jackson's motion to the extent it seeks a protective order under Rule 26(c).

Rule 26 allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining whether discovery is appropriate, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Under Rule 26(c), "a district court may grant a protective order preventing the production of discovery to protect a party or entity from "annoyance, embarrassment, oppression, or undue burden or expense." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 235 (6th Cir. 2016) (quoting Fed. R. Civ. P. 26(c)(1)). "To sustain a protective order under Rule 26(c), the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Id.* at 236 (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). The harms identified in Rule 26(c)(1) to support a protective order are "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Good cause exists if 'specific prejudice or harm will result" from the absence of a protective order.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (quoting *In re Roman Cath. Archbishop of Portland in Oregon*,

661 F.3d 417, 424 (9th Cir. 2011). "A party who seeks to avoid disclosure of requested materials 'bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury . . . .'" *Lillard v. Univ. of Louisville*, No. 3:11-CV-554-JGH, 2014 WL 12725816, at *6 (W.D. Ky. Apr. 7, 2014) (quoting *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla., 1985)).

Jackson argues that the discovery requests are harassing, intended to annoy, and illegal. [DE 207 at 2733]. In support, he repeats his arguments that the discovery requests seek "invasive information pertaining to [Jackson's] personal rights" and that Cadle has not shown how the discovery requests are in the interest of pursuing the corporation's judgment. [*Id.*]. He further claims that responding to this request "would require unwarranted extensive document review, and disclosure of sensitive personal information which is disproportionate to the needs of the case." [*Id.* at 2734]. Finally, he contends that Cadle's conduct "demonstrates a pattern of annoyance" because he has repeatedly sought discovery in support of enforcing the judgment. [*Id.*].

In short, Jackson fails to illustrate any of the Rule 26(c) enumerated harms "with a particular and specific demonstration of fact . . . ." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (quoting *Serrano*, 699 F.3d at 901). His broad assertions that the information requested is invasive, intended to annoy, and would cause extensive document review amount to conclusory statements insufficient to establish "good cause." *See In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 737 F. Supp. 3d 611, 617 (E.D. Mich. 2024) (finding that plaintiffs failed to establish good cause when their "account of their 'hardships' consist[ed] almost entirely of generalized assertions that they would suffer inconvenience, expense, or incur unpaid time off from work" and "none of the inconveniences described amount[ed] to a sufficiently specific showing of tangible harm so as to establish good cause for a protective order"). He has not identified any "specific

prejudice or harm [that] will result" in the absence of a protective order, other than his claim that responding would require extensive document review and disclosure of sensitive personal information. *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236. Yet, these fleeting mentions of harm, without pointing to specific document requests that will bring about such harm, do not convince the Court that Jackson has met his heavy burden of demonstrating that disclosure will cause a "clearly defined and very serious injury." *Lillard*, 2014 WL 12725816, at *6 (quoting *Empire of Carolina*, 108 F.R.D. at 326).

Moreover, in support of the relevance of the discovery sought from Warner, Cadle has stated that "Warner's files concern the after-the-fact 'Special Litigation Committee' and the insider 'setoff/satisfaction' papers that Jackson and his allies now wield to declare a federal judgment effectively unenforceable." [DE 205 at 2719]. He therefore maintains that the requested information—including "[d]ocuments reflecting the SLC's formation, membership, instructions, communications, retention (or refusal to retain) counsel, scope of inquiry, and conclusions, along with drafts and correspondence concerning indemnification and the so-called Agreement of Mutual Setoff and Satisfaction—are relevant to whether the SLC is a "vehicle to insulate Jackson and extinguish a corporate asset . . . ." [*Id.* at 2720]. Accordingly, Cadle seeks discovery from Warner in aid of executing the judgment, which is permitted under Rule 69. Fed. R. Civ. P. 69(a)(2) ("In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules . . . ."). The party seeking discovery "must make 'a threshold showing of the necessity and relevance' of the information sought." *Michael W. Dickinson,* 2012 WL 5868903, at *2 (E.D. Ky. Nov. 20, 2012) (quoting *Trs. of N. Fla. Operating Eng'rs Health & Welfare* Fund, 148 F.R.D. at 664). Cadle has done so here by explaining that the records sought are relevant to the formation of the SLC and the question of

whether Jackson is attempting to avoid enforcement of the judgment. Given that Cadle has made this threshold showing and Jackson has set forth only vague and conclusory harms that would result from the discovery, Jackson's motion for a protective order will be denied.

### III.    CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

(1) Jackson's objections to the Magistrate Judge's order granting the motion to compel [DE 194] are **OVERRULED**.

(2) Jackson's motion to stay [DE 197] is **DENIED AS MOOT**.

(3) Jackson's motion to dismiss post-judgment discovery proceedings and stay enforcement of the judgment [DE 201] is **DENIED**.

(4) Jackson's motion to quash the subpoena issued to Warner [DE 204] is **DENIED**.

(5) Jackson's amended motion to object to a subpoena and seek a protection order [DE 207] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

February 4, 2026